# Exhibit A

Case: 1:25-cv-06363 Document #: 1-1 Filed: 06/06/25 Page 2 of 43 PageID #:17
For updated information about your case, including hearings, subsequent filings, documents, and the case's final resolution, please visit the Cook County Clerk's Office and search for your case: https://casesearch.cookcountyclerkofcourt.org

FILED
3/18/2025 12:43 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025CH03125
Calendar, 15
31870380

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

ALEX MARTINEZ, individually and on behalf of similarly situated individuals,

        Plaintiff,

v.

HDC GROUP LLC,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.    **2025CH03125**

**CLASS ACTION COMPLAINT**

## CLASS ACTION COMPLAINT

Plaintiff, Alex Martinez, individually and on behalf of others similarly situated, by and through undersigned counsel, and for his Class Action Complaint against Defendant HDC Group, LLC ("Defendant" or "HDC"), alleges as follows based upon personal knowledge with respect to himself, and on information and belief derived from, among other things, investigation by counsel and review of public documents as to other matters.

## NATURE OF THE ACTION

1. Plaintiff brings this action against Defendant for unlawfully manufacturing, marketing, and selling potent "cannabis-infused products" ("CIPs") with excessively high tetrahydrocannabinol ("THC") content—well above the applicable legal limits imposed under Illinois law for consumers' health and safety. Defendant masquerades its CIPs as legal for purchase and consumption in Illinois; in actuality, however, the products vastly exceed the applicable THC limits for CIPs, as well as the personal possession limits for those products. This subjects purchasers to risks of adverse effects associated with overconsumption of THC, as well as legal risks for possession of illegal products.

1

FILED DATE: 3/18/2025 12:43 PM    2025CH03125

2.      The CIPs at issue are vapable products like cannabis oil vaporizer cartridges, disposable oil vaporizers, and others such as resin, rosin, budder, badder, crumble, and shatter (collectively referred to as "Vapable Oils"). Vapable Oils are used in conjunction with a device to vaporize their contents, which are then consumed via inhalation *i.e.* "vaping."

3.       Consuming Vapable Oils does not utilize combustion and their consumption is thus not considered smoking for purposes of the Illinois Cannabis Regulation and Tax Act (the "CRTA") or the Illinois Compassionate Use of Medical Cannabis Program Act ("Medicinal Act," collectively with the CRTA, the "Illinois Cannabis Acts"). Rather, Vapable Oils are a type of CIP, as they are intended to be consumed by vaporizing the contents and then inhaling them using a non-combustible heating device.

4.      Nevertheless, Defendant manufactures, markets, labels, and/or packages Vapable Oil products as though they are smokeable concentrates, in 500-milligram and 1-gram quantities, including under the Timeless brand, and, on information and belief, Defendant HDC manufactures Vapable Oils for other companies.



5.      Under Illinois law, CIPs are not allowed to contain more than 100 milligrams of THC per package. Despite this, Defendant's Vapable Oils universally exceed this legal limit by

FILED DATE: 3/18/2025 12:43 PM    2025CH03125

five and a staggering ten times by marketing and presenting its products as cannabis concentrate when, in fact, the Vapable Oils are CIPs.

6.      Defendant does this because cannabis concentrates are not subject to any per package limits and have higher personal possession limits, at a 5-gram personal possession limit for Illinois residents and a 2.5-gram limit for out-of-state consumers, for example.

7.      Accordingly, Defendant is selling improperly labeled Vapable Oils in single packages that universally exceed the legal THC limit imposed on individual packages of CIPs, as well as the personal possession limits imposed on Illinois residents and out-of-state consumers.

8.      In doing so, Defendant intentionally or recklessly misrepresented that its Vapable Oils were cannabis concentrates when, in fact, they are CIPs.

9.      On information and belief, Defendant made this misrepresentation to deceive regulators and consumers in order to allow Defendant to manufacture and/or sell Vapable Oils using the 5-gram limit applied to concentrates, instead of the lower 500-milligram CIP limit imposed on Illinois residents, or the even lower limits imposed on out-of-state consumers.

10.     This misrepresentation enabled Defendant to sell up to 11 times the amount of CIP an adult-use consumer is allowed to lawfully possess at one time, thereby exceeding the limits which could be sold to a consumer in a single transaction, and generating significant profits for Defendant at the expense of Illinois consumers and in spite of Illinois law.

11.     Plaintiff and other consumers who purchased Defendant's Vapable Oils were misled to believe that they were purchasing a legal cannabis product that complied with statutorily imposed limits, required labels, and packaging. This deception continues to this day, affecting and harming consumers throughout Illinois daily.

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

12.     By deceiving regulators and consumers about the legality and of its products, Defendant was able to take away market share from competing products and increase its own sales and profits, all while subjecting consumers to real risks to their health and safety.

13.     As a result, consumers have been and continue to be overcharged, placed at risk from overconsuming Defendant's illegal product, and incurring other consequential damages and harm.

14.     Accordingly, Plaintiff brings this action individually and on behalf of similarly situated individuals to seek redress for violations of the Illinois Uniform Deceptive Trade Practices (815 ILCS 510/1 *et seq.*) and Illinois Consumer Fraud Act (815 ILCS 505/1 *et seq.*), as well as common law torts of fraud and fraudulent concealment, breaches of express and implied warranties, declaratory judgment, and unjust enrichment, among others.

## PARTIES

15.     At all relevant times, Plaintiff Alex Martinez has been a citizen of the State of Illinois and resident of Cook County.

16.     Defendant HDC Group, LLC, is an Illinois limited liability company and is licensed as an Infuser under the Illinois Cannabis Regulation and Tax Act, 410 ILCS 705/1 *et seq.* and/or the Compassionate Use of Medical Cannabis Program Act, 410 ILCS 130/1 *et seq.* HDC is managed by Erik Diehn and Bran Noonan and its principal place of business and infusion center is in Elk Grove Village, Cook County, Illinois.

17.     Defendant HDC as a licensed infuser and contracts with third parties to manufacture, produce, process, package, label, sell, and distribute CIPs.

4

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

## CANNABIS INDUSTRY LICENSING STRUCTURING

18.     As cannabis-related business licenses in the State of Illinois, and elsewhere, are heavily regulated at the state level, licenses are not readily or freely available to cannabis businesses like Defendant.

19.     To bypass the time and capital commitment required by state licensing processes, cannabis businesses enter into product licensing and branding agreements with infusers, like HDC, that are already licensed and operating in untapped markets they wish to exploit.

20.     Under those agreements, infusers like HDC manufacture, produce, process, package, label, and/or distribute the products under the strict specifications, guidelines, and approvals, of the contracting party.

21.     This allows cannabis businesses to hastily begin and ramp up their operations in new markets without being subjected to the rigors and timetables of the local state's licensing process.

22.     This practice is not unique to HDC, as other licensed cannabis infusers in the State of Illinois engage in the same practice.

## JURISDICTION

23.     The Court has personal jurisdiction over Defendant pursuant to 735 ILCS 5/2-209(a)(1) because Defendant transacted business in this State by selling Vapable Oils to consumers in Illinois, including Plaintiff. Defendant is registered to do business in Illinois and has been doing business in Illinois during all relevant times. Directly and through its agents, Defendant has substantial contacts with Illinois (including acquiring State of Illinois licensure to manufacture cannabis products), have purposefully availed themselves of the Illinois market, and have received substantial benefits and income from Illinois.

5

FILED DATE: 3/18/2025 12:43 PM    2025CH03125

24.     Venue is proper in Cook County because Defendant has offices, dispensaries, or agents in Cook County and a substantial part of the acts or omissions giving rise to the claims asserted in this Complaint occurred in Cook County, including purchases of the Vapable Oils.

### COMMON FACTS

#### VAPABLE OILS

25.     Vapable Oils are one of the most common forms of CIP sold in the State of Illinois. They are ubiquitous, and readily available at most dispensaries.

26.     Vapable Oils are generally sold in three formats – (1) disposables; (2) cartridges; and (3) raw. The following is a representative sample of each of these types of products:



**Disposables**              **Cartridges**              **Raw**

27.     Vapable Oil disposables come with a pre-charged battery and contain cannabis oil, pre-loaded for immediate use. Vapable Oil disposables typically consist of a pre-charged battery, heating element, filled reservoir containing cannabis oil, and mouthpiece in one device.[1]

28.     Vapable Oil disposables use the built-in battery to heat the oil in the tank until it vaporizes, then it is inhaled by the user. Once the user has finished with the product, they can dispose of the entire device.

---

[1] *See* https://www.leafly.com/news/cannabis-101/types-of-cannabis-vape-carts (last visited Feb. 7, 2025).

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

29. Vapable Oil cartridges, on the other hand, are pre-filled glass or plastic cartridges that contain cannabis oil. They are generally used with a "vape pen," which is a "battery that works in conjunction with [the] cartridge." When activated, the "battery heats up an atomizer in the cartridge which in turn heats up and activates the various compounds in the cannabis oil." *Id.*

30. Ultimately, each Vapable Oil cartridge operates in a functionally similar, if not identical, manner. An atomizer is heated using a battery in order to heat and activate cannabis oil contained therein, which is then inhaled by the user.

31. Raw vaporizable cannabis products, such as resin, rosin, budder, badder, crumble, sugar, sauce, shatter, wax, bubble hash, and diamonds, are typically vaporized utilizing a device called a "rig." The process of vaping in this way is referred to as "dabbing."[2] As such, these products are not sold in prepackaged cartridges or disposables.

32. Traditional glass dab rigs are made out of a water pipe that features a "nail" "or banger," which is heated manually to vaporize the product. The vapor flows into the rig and passes through the water, cooling and filtering it before inhalation.

33. Electric dab rigs, on the other hand, allow the user to select a heat setting without the need to manually heat anything.

### MEDICINAL AND ADULT USE CANNABIS IN THE STATE OF ILLINOIS

34. In 2013, finding that the adoption of rules to regulate cannabis use is necessary for the public interest, safety, and welfare of its citizens, the State of Illinois became the 20th state to authorize the cultivation, dispensing, and use of cannabis for medicinal purposes, passing the Medicinal Act. *See* 410 ILCS 130/115.5 ("The General Assembly finds that the adoption of rules

---

[2] *See* https://herb.co/learn/what-is-dabbing (last visited Feb. 7, 2025).

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

to regulate cannabis use is deemed an emergency and necessary for the public interest, safety, and welfare.").

35.     The Illinois Department of Public Health manages the registry of Patients and issues registry cards to Illinois residents meeting the program requirements.

36.     In 2018, the Alternative to Opioids Act of 2018 (the "Alternative to Opioids Act") was signed into law to expand access to medical cannabis. The Alternative to Opioids Act created the Opioid Alternative Pilot Program (the "OAPP"), which allowed individuals to access medical cannabis as an alternative to prescriptions for opioids as certified by licensed Illinois physicians.

37.     Illinois adopted laws allowing medicinal cannabis use because of the therapeutic and beneficial value it could provide to Illinoisans suffering from debilitating illnesses and to protect "seriously ill patients who have a medical need to use cannabis" from legal prosecution and arrest. 410 ILCS 130/5(d).

38.     Illinois passed the CRTA in 2019, legalizing the possession and use of recreational cannabis by persons over the age of 21 in the state of Illinois, subject to certain limitations on use and possession limits.

39.     Incorporating lessons learned from the period of strictly medical use cannabis, the General Assembly, "[i]n the interest of the health and public safety of the residents of Illinois," found and declared that:

> [C]annabis should be regulated in a manner similar to alcohol so that . . . cannabis sold in this State will be tested, labeled, and subject to additional regulation to ensure that purchasers are informed and protected; and [that] purchasers will be informed of any known health risks associated with the use of cannabis, as concluded by evidence-based, peer reviewed research.

410 ILCS 705/1-5(a).

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

40.     The Illinois Cannabis Acts appointed various State agencies with rule-making power over the sale, use, and harvesting of cannabis products to regulate, among other items, the amount of THC that can be in a particular product and possessed by a person as well as dosages, labeling, and packaging requirements.

### LEGAL PRODUCTS UNDER ILLINOIS LAW

41.     The production and manufacture of cannabis products is limited to appropriately licensed entities in the State of Illinois. With the appropriate licensing, entities can cultivate and grow cannabis flower and make cannabis concentrate from that flower, among other functions.

42.     The Illinois Cannabis Acts regulates two general categories of cannabis products permitted to be manufactured, packaged, and sold to retail consumers in the State of Illinois: (1) smokeable products, including smokeable concentrates; and (2) CIPs, such as Vapable Oils, gummies, tinctures, and oils, among others, that are made by incorporating cannabis concentrate. *See* 410 ILCS 705/1-10.

43.     These categories of products are defined as follows in the CRTA and Department of Agriculture Regulations:

> "**Cannabis concentrate**" means a product derived from cannabis that is produced by extracting cannabinoids, including tetrahydrocannabinol (THC), from the plant through the use of propylene glycol, glycerin, butter, olive oil, or other typical cooking fats; water, ice, or dry ice; or butane, propane, $CO_2$, ethanol, or isopropanol and ***with the intended use of smoking or making a cannabis-infused product.***
>
> "**Cannabis-infused product**" means a beverage, food, oil, ointment, tincture, topical formulation, ***or another product containing cannabis or cannabis concentrate that is not intended to be smoked***.
>
> "**Smoking**" means the inhalation of smoke caused by the ***combustion*** of cannabis. 410 ILCS 705/1-10 (emphases added); *see also* 8 ILAC 1000.10.

44.     Pursuant to the above definitions, cannabis concentrate can only be incorporated into and sold to a retail consumer as a: (1) smokeable product; or (2) cannabis-infused product *i.e.* CIP.

FILED DATE: 3/18/2025 12:43 PM    2025CH03125

45.     The CRTA properly defines smoking as requiring combustion.

46.     Distinct from smoking is the practice of "vaping," which does not require combustion.

47.     The Illinois Department of Agriculture reinforces in its Compliance Alert Notice that "vaping would not generally be considered 'smoking'" under the CRTA, "so long as combustion is not required to vaporize the 'cannabis-infused product'." Ill. Dept. Ag. CA-2022-09-INF Infusers and Vape Cartridges.

48.     Notably, and particularly relevant here, HDC is only licensed as an *Infuser* under the Illinois Cannabis Acts.

49.     As such, HDC is legally authorized to manufacture and produce *only* CIPs.

50.     Despite this, HDC manufactured, and continues to manufacture, products that contain amounts of THC that are not only in excess of the per-product limitations placed on CIPs, but that exceed the CIP personal possession limits for resident and out-of-state adult-use consumers.

### CANNABIS LABELING, PACKAGING, AND WARNING REQUIREMENTS

51.     The Illinois General Assembly has declared cannabis should be regulated so that "cannabis sold in this State will be tested, labeled, and subject to additional regulation to ensure that purchasers are informed and protected; [] and purchasers will be informed of any known health risks associated with the use of cannabis, as concluded by evidence-based, peer-reviewed research." 410 ILCS 705/1-5(b)(5-6); 410 ILCS 130/5.

52.     The most basic requirement is that the product package must define what the product is, whether that be an edible CIP, smokeable product, or other form of legal product, and labeled with the common name of the product. *See* 410 ILCS 705/55-21(e)(2); 8 ILAC 1300.930(b)(2); 77 ILAC 720.40(b); 410 ILCS 705/55-21(e); 410 ILCS 130/80; 77 ILAC 946.400.

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

53. The contents of the product must be listed, including ingredients, and the total of listed contents shall not be below 85% or above 115% of the labeled amount. 410 ILCS 705/55-21(e)(8)(B); 8 ILAC 1000.420(d)(8)(B).

54. Cannabis products produced by concentrating or extracting ingredients from a cannabis plant must identify the type of extraction method, solvents or gas used to create the concentrate or extract, and any other chemicals or compounds used to produce or that were added to the concentrate or extract, including when that concentrate or extract is utilized in either a CIP or smokeable product. 410 ILCS 705/55-21(g).

55. The Illinois Cannabis Acts require that CIPS "shall meet the packaging and labeling requirements contained [therein.]" 410 ILCS 705/55-5(a).

56. With respect to CIPs intended for consumption, the maximum limit imposed by the Illinois Cannabis Acts for one package is no more than 100 milligrams. 8 ILAC 1000.420(f); 8 ILAC 1300.920(d); 410 ILCS 705/55-21(k).

57. Illinois imposed these limitations to protect the health and safety of the residents of Illinois and other cannabis purchasers, as demonstrated by the State's own warnings against overconsumption:

**Are there added risks for regular cannabis use?**

Routine and high-dose cannabis use may have more health consequences than occasional or low-dose cannabis use.  Remember, some cannabis sold at Illinois dispensaries has higher amounts of THC than illegally grown and sold cannabis before legalization. [3]

---

[3] Illinois Cannabis Regulation Oversight Office, https://cannabis.illinois.gov/about/faqs.html#faq-item-faq_copy-0-1 (last visited Feb. 7, 2025).

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

58.     Even in the limited research conducted to date, high-potency cannabis products have been linked to significant risk of psychosis and other psychiatric-related illnesses.[4]

59.     With recommendations from the Department of Public Health, the Illinois Cannabis Acts also mandate warnings for specific product types that "must" be present on labels when offered for sale to an end consumer:

> Cannabis that may be smoked must contain a statement that 'Smoking is hazardous to your health.'
>
> Cannabis-infused products (other than those intended for topical application) must contain a statement 'CAUTION: This product contains cannabis, and intoxication following use may be delayed 2 or more hours. This product was produced in a facility that cultivates cannabis, and that may also process common food allergens.'

410 ILCS 705/55-21(j).

60.     Once *any* label has been affixed to the primary packaging of cannabis or a CIP, it may not be altered or destroyed by anyone other than the purchaser. 410 ILCS 705/55-21(l).

61.     Cannabis business establishments, including cultivators and dispensaries, may not engage in, maintain, or place advertising that contains any statement or illustration that: (1) is false or misleading; or (2) promotes overconsumption of cannabis or cannabis products. 410 ILCS 705/55-20(a); 410 ILCS 705/55-20(b)(4); 410 ILCS 705/55-21(f); 8 ILAC 1300.930(c).

62.     Likewise, cannabis product packaging may not include information that "(1) is false or misleading; [or] (2) promotes excessive consumption[.]" 410 ILCS 705/55-21(f); 8 ILAC 1300.930(c); 8 ILAC 1000.420(g).

---

[4] *See e.g.* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2801827/ (noting that the "most striking finding is that patients with a first episode of psychosis preferentially used high-potency cannabis preparations of the sinsemilla (skunk) variety" which was a potency level of 12-18% THC); https://www.hazeldenbettyford.org/research-studies/addiction-research/high-potency-marijuana ("Individuals who used high-potency cannabis on a daily basis were found to be five times more likely to experience a psychotic disorder than non-users").

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

## CANNABIS QUANTITY LIMITS

63.     To protect consumers in the State of Illinois, the Illinois Cannabis Acts impose limits on the amount of cannabis that can be possessed by an individual. *See e.g.* 410 ILCS 705/10-10(a)-(b).

64.     An individual over the age of 21 purchasing for recreational purposes who is an Illinois State resident is permitted to cumulatively possess no more than 500 milligrams of THC contained in CIPs and 5 grams of cannabis concentrate. 410 ILCS 705/10-10(2).

65.     The Illinois Cannabis Acts limits non-residents to cumulatively possessing no more than 250 milligrams of THC contained in a CIP and 2.5 grams of smokeable concentrate. *See* 410 ILCS 705/10-10(a)-(b).

66.     An individual purchasing for medicinal purposes cannot purchase more than an adequate supply for their medicinal needs, which the Medicinal Act limits to 2.5 ounces of cannabis in any 14-day period. 410 ILCS 130/130(i)(4); 410 ILCS 130/10(a).

## DEFENDANT'S VAPABLE OILS

67.     Defendant sells Vapable Oils in 500-milligram and 1-gram sizes under the brand name Timeless Vapes.

68.     The Defendant controls and/or approves the marketing, advertising, and packaging content of each of its brands. Each of Defendant's Vapable Oils are marketed under the product categories of disposable vapes, vape pens, or cartridges at various dispensaries with no mention or clarification that they are, in fact, CIPs.

69.     Defendant's Vapable Oils are CIPs because they are "products," which contain "cannabis concentrate that is not intended to be smoked." Ill. Dep. Ag. CA-2022-09-INF Infusers and Vape Cartridges.

FILED DATE: 3/18/2025 12:43 PM    2025CH03125

70.     Notably, despite Defendant's marketing materials expressly stating that the oil contained in its Vapable Oils are intended to be vaporized – <u>not smoked</u> – Defendant markets, packages, and sells its Vapable Oils as concentrates as opposed to CIPS.

71.     All of Defendant's Vapable Oils exceed the 100-milligram per-product limit of THC imposed upon CIPs by the State of Illinois.

72.     Defendant markets and packages its Vapable Oils as cannabis concentrates in a number of ways, including through marketing of the products as concentrates, packaging them in amounts which CIPs are prohibited from being sold in, and by omitting their status as CIPs, and further concealing that status by marketing them simply as "vapes" without further description.

73.     All of this serves to deceive and confuse consumers into believing that the Vapable Oils are cannabis concentrates instead of CIPs, and, further, that Defendant's Vapable Oils are lawfully compliant products.

74.     The Illinois Cannabis Acts limit a person to possessing only 500 milligrams of THC in CIPs at a time. However, a single purchaser is allowed to possess up to 5 grams of cannabis concentrate.

75.     By misrepresenting its Vapable Oils as cannabis concentrate, Defendant is able to increase the sales of its CIPs by a factor of 11.

76.     If Defendant had complied with the Illinois Cannabis Acts, Illinois consumers would be limited to purchasing up to five 100-milligram cartridges at a time (or any combination of compliant CIPs totaling 500 milligrams) and would be prevented from purchasing additional CIPs.

FILED DATE: 3/18/2025 12:43 PM  2025CH03125

77.     Under Defendant's current illegal scheme, however, consumers can purchase 10 times that amount (5 grams) as cannabis concentrate in 500-milligram and 1-gram increments, and still purchase an additional 500 milligrams of CIPs.

78.     In total, this is 11 times the maximum possession limit of CIPs imposed by law.

79.     As a result, consumers purchase Defendant's Vapable Oils reasonably believing they are perfectly legal and safe to use, and instead receive products that are illegal and cannot be lawfully sold or possessed in Illinois.

80.     Further, Defendant's deceptive practices expose consumers to a risk of overconsumption. Users specifically seek out certain types of cannabis products based on their potential therapeutic benefits like anxiety relief or pain management. By selling its Vapable Oils with THC content well above the legally allowed limit, Defendant put its customers at risk of adverse physical effects like psychoactive effects, anxiety attacks, or overwhelming intoxication.

81.     One of the most important, material features of a cannabis product is the ability for a consumer to legally purchase, possess, and consume the product. Consumers lack the ability to test or independently ascertain the ingredients and legality of Defendant's Vapable Oils at the point of sale. Accordingly, reasonable consumers must and do rely on Defendant to honestly report the legality of its Vapable Oils and their contents when designing, manufacturing, distributing, and selling the Products.

82.     Defendant's unlawful conduct is uniform across their Vapable Oils. Defendant has made no attempt to clarify that its Vapable Oils are CIPs, despite the duties imposed upon it by the Illinois Cannabis Acts.

83. Defendant knew or should have known that its Vapable Oils were, in fact, CIPs; yet despite that knowledge, they continue to deceptively market and package them as cannabis concentrate, reaping the benefits of its deception.

84. Additionally, HDC produces CIPs for other businesses with which it contracts. On information and belief, HDC is undertaking the same unlawful conduct in the manufacture, processing, packaging, labelling, distribution, and sale of other Vapable Oils to consumers in the State of Illinois.

## ALLEGATIONS SPECIFIC TO ALEX MARTINEZ

85. Plaintiff Alex Martinez is an adult use cannabis purchaser.

86. On or around July 7, 2024, Plaintiff Martinez purchased a 500-milligram Timeless Blue Dream Distillate Cart from an Ivy Hall Dispensary in Chicago, Illinois.

87. Plaintiff Martinez's total for the Timeless cartridge before the application of any taxes or discounts was $45.00.

88. Defendant's cartridges were, and still are, marketed as a 500-milligram vape cartridges. These products feature upwards of 88% THC each.

89. However, at the time Plaintiff Martinez made these purchases, Plaintiff Martinez was not aware that the Vapable Oils had been improperly labelled and marketed, and were, in fact, unlawful CIPs containing nearly five times the 100-milligram limit imposed by Illinois law upon each package of CIP.

90. Making matters more confusing, the label and packaging used by Defendant for its Vapable Oils generally included, and continue to include, the warning for smokeable products, as well as the required warning for CIPs.

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

HDC Group, LLC, PO BOX 91852, Elk Grove Village, IL, 60007.
Vape Cartridge Watermelonz        .5G
Serial Number:2828 9451 6794 3464
QA Lab:   Steep Hill Labs
Testing Date:07/18/2024    Package Date:7.22.2024
Manufacture Date 07/16/24      Use by:  7/18/2025
Quantity:    .5G
Potency Analysis
THC: 89.157%      THCa:  0.00%
CBD: 0.177%      CBDa:  0.00%

Microbial, Mycotoxin, & Pesticide Screen: Pass
Solvent Screen: Pass
Ingredients: Distilled Cannabis Oil (Extracted Using
Ethanol), Watermelon Zkitties Botanically Derived
Terpenes (B-Caryophyllene, Myrcene, Limonene,
Humulene, a-Pinene, B-Pinene, Linalool, Guaiol)
Para obtener informacion en Espanol, sobre nuestros
productos, por favor contactenos por
https://tinyurl.com/4z8mrx9c

WARNING: This product contains cannabis and is intended for use by adults 21 and over. Its use can impair cognition and may be habit forming. This product should not be used by pregnant or breastfeeding women. It is unlawful to sell or provide this item to any individual, and it may not be transported outside the State of Illinois. It is illegal to operate a motor vehicle while under the influence of cannabis. Possession or use of this product may carry significant legal penalties in some jurisdictions and under federal law. Smoking is hazardous to your health. CAUTION: This product contains cannabis, and intoxication following use may be delayed 2 or more hours. This product was produced in a facility that cultivates cannabis, and that may also process common food allergens.

91.     Plaintiff Martinez relied on Defendant's representations that the sale of its products were compliant and safe, based on its status and holding themselves out as licensed cannabis companies under the State's robust regulatory structure, and reasonably assumed compliance with same in purchasing the Vapable Oils.

92.     Plaintiff Martinez relied on Defendant's representations, and the information and warning labels on the Vapable Oils, in deciding to purchase the Vapable Oils. Plaintiff did not know that the Vapable Oils he was purchasing were actually CIPs that were not compliant with the Illinois Cannabis Acts.

93.     Plaintiff Martinez would not have purchased these Vapable Oils had he known that it was not legal, did not have appropriate warnings and information on the packaging and product, and did not have any dosing instructions.

94.     Moreover, Plaintiff Martinez would not have been able to purchase the Vapable Oils, as the sales were prohibited by the Illinois Cannabis Acts.

95.     The Vapable Oils are substantially less valuable (and in fact are worthless as a legal alternative to illicit cannabis) because they do not comply with the cannabis standards set out by

FILED DATE: 3/18/2025 12:43 PM    2025CH03125

the State of Illinois. The Vapable Oils should not, and legally could not, have been sold or possessed by consumers.

96.     Plaintiff Martinez was misled and harmed as a proximate result of Defendant's conduct.

## CLASS ACTION ALLEGATIONS

97.     Plaintiff brings his claims individually and on behalf of the following class (the "Class") pursuant to 735 ILCS 5/2-801:

> All persons who, within the applicable limitations period, purchased within the State of Illinois any Vapable Oils manufactured, processed, made, labeled, and/or packaged by HDC Group, LLC.

98.     Excluded from the Class are: (1) Defendant; (2) Defendant's officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity; (3) any Judge or Magistrate Judge presiding over this action, their staff, and the members of their family; (4) persons who properly and timely request exclusion; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defendant's counsel, and their experts and consultants.

99.     **Numerosity**. The proposed class contains members so numerous that separate joinder of each member of the class is impracticable. The total sales of Vapable Oils during the applicable statutory period are in the millions and there are thousands of proposed class members. The individuals who purchased Vapable Oils can be ascertained through records in the possession, custody, or control of Defendant.

100.     **Commonality and Predominance**. There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members, including but not limited to the following:

- Whether Defendant misled consumers into purchasing Vapable Oils;

18

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

- Whether Defendant misrepresented or concealed material facts about the Vapable Oils, including the nature of the products and safety of using them;

- Whether Defendant improperly labeled and advertised the Vapable Oils;

- Whether the Vapable Oils constitute an unreasonable safety risk;

- Whether Plaintiff is entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

- Whether Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Acts when it sold to consumers the Vapable Oils; and

- Whether Defendant acted with deliberate indifference to the safety risks posed by the Vapable Oils.

101.    **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff understands the obligations inherent in representing a putative class, and the corresponding duties. Plaintiff has retained counsel competent and experienced in complex and class action litigation.  Plaintiff has no interests antagonistic to the Class's interests, and Defendant has no defenses unique to Plaintiff.

102.    **Appropriateness:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and because joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and

FILED DATE: 3/18/2025 12:43 PM    2025CH03125

comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## CLAIMS FOR RELIEF

### COUNT I

### Violation of Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* on behalf of Plaintiff and the Class

103.    Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully stated herein.

104.    Defendant, Plaintiff, and Class Members are "persons" within the meaning of the Uniform Deceptive Trade Practices Act (the "UDTPA") 815 ILCS 510/1(5).

105.    The UDTPA declares that any 'person,' such as Defendant, engages in a deceptive trade practice when, in the course of their business, they "represent[] that goods . . . have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have[.]" 815 ILCS 510/2(a)(5).

106.    It is also a deceptive practice for a person to represent "that goods . . . are of a particular standard[] or quality[,]" to "advertise[] goods . . . with the intent not to sell them as advertised[,]" or to "engage in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(a)(7),(a)(9),(a)(12).

107.    As alleged above, Defendant knowingly and/or recklessly misrepresented that the Vapable Oils they produced, distributed, marketed, and advertised were legally compliant cannabis concentrate, by, among other ways, HDC's introduction of these products into the stream of commerce as a licensed Infuser in the State of Illinois, when in fact and as Defendant actually knew, they were CIPs.

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

108.   Defendant knowingly misrepresented and advertised the goods as having a "quality," "sponsorship," "approval," "characteristics," "quantities," or "ingredients" that they did not have – namely, that they were cannabis concentrates.

109.   Each of the Vapable Oils that Defendant produced were non-compliant with the Illinois Cannabis Acts, and thus unlawful to sell, due to, in addition to other factors, the quantity and contents (ingredients) of each product failing to comply with the legal restrictions imposed by the Illinois Cannabis Acts.

110.   Moreover, Defendant expressly marketed the Vapable Oils as cannabis concentrate, not CIPs, which at its core, is a misrepresentation of material fact to any transaction regarding the quality and characteristics of the products at issue.

111.   Defendant's misrepresentations through its marketing and advertising led to the deception and confusion of consumers, including Plaintiff and the Class, regarding the nature and legal status of the Vapable Oils and their proper use.

112.   Defendant's acts and practices were likely to, and did, in fact, deceive and mislead members of the public, including consumers acting and relying reasonably under the circumstances, to their detriment, including Plaintiff and members of the Class.

113.   The unlawful Vapable Oils marketed and sold by Defendant was also likely to be confused with products that did conform to the legal requirements imposed by the Illinois Cannabis Acts, as they were sold and marketed as lawful goods and were not distinguished from lawful goods when marketed or sold in any way.

114.   Defendant's deceptive conduct continues, and they continue to produce, market, and sell these unlawful Vapable Oils across a number of jurisdictions, putting unknowing consumers at risk for its joint financial benefit.

FILED DATE: 3/18/2025 12:43 PM    2025CH03125

115.     With the dynamic and opaque nature of the cannabis industry, consumers, including Plaintiff and other members of the Class will not reasonably be able to avoid Defendant's products in the future, as Defendant continues to license, merge, acquire, create, and exchange various brands and manufacturers with other industry competitors.

116.     On information and belief, Defendant HDC participated in identical wrongful conduct in the production, labelling, packaging, marketing, and sale, of Vapable Oils for other third parties.

117.     Plaintiff, on behalf of himself and the putative Class, requests that the Court enter an order for a Declaratory Judgement declaring that Defendant's manufacture, marketing, and sale of Vapable Oils as described is a deceptive trade practice in violation of the UDTPA.

## COUNT II
### Violation of the Illinois Consumer Fraud Act 815 ILCS 505/1 *et seq.* on behalf of Plaintiff and the Class

118.     Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully stated herein.

119.     Plaintiff, Members of the Class, and Defendant are "persons" within the meaning of 815 ILCS 505/1(c) and 510/1(5).

120.     At all times mentioned herein, Defendant engaged in "trade" or "commerce" in Illinois as defined by 815 ILCS 505/1(f), by engaging in the offering and sale of things of value in Illinois.

121.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") provides that ". . . [u]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the

concealment, suppression or omission of such material fact, or the use or employment of any practice described in . . . the 'Uniform Deceptive Trade Practices Act'… in the conduct of any trade or commerce are . . . unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2. The ICFA further makes unlawful deceptive trade practices undertaken in the course of business. 815 ILCS 510/2.

122.    Plaintiff and the Class purchased Vapable Oils manufactured and/or marketed by Defendant.

123.    Defendant misrepresented the Vapable Oils through statements, omissions, ambiguities, half-truths, and/or actions and engaged in unfair or deceptive acts or practices prohibited by the ICFA by engaging in the following, among other conduct.

124.    In violation of the Illinois Cannabis Acts, Defendant manufactured, marketed, and advertised unlawful and dangerous Vapable Oils in volumes of up to 1 gram (1,000 milligrams), containing per package amounts of THC in excess of those allowed by law, the production, sale, and marketing of which is expressly prohibited by the Illinois Cannabis Acts.

125.    To make matters worse, many of the 500-milligram and 1-gram Vapable Oils purchased contain more THC in a single CIP than an out-of-state consumer, or adult-use Illinois resident, respectively, are even allowed to possess.

126.    Defendant accomplished this through a number of deceptions, misrepresentations, omissions, concealments, and other unfair conduct.

127.    Defendant undertook this conduct with the intent that consumers and others would rely on its deceptive and unfair schemes, so they could unlawfully market, sell, and profit off of various CIPs being sold as cannabis concentrate.

FILED DATE: 3/18/2025 12:43 PM    2025CH03125

128.    As alleged, Defendant's marketing, packaging, advertising, and business practices were rife with deception.

129.    Specifically, Defendant systematically misrepresented that the Vapable Oils at issue were cannabis concentrate by ensuring that they were advertised as such on its own website and labelled and sold as such on the websites of retailers, with the intent that its CIPs, the Vapable Oils, would be sold as cannabis concentrate, resulting in the sale of CIPs to consumers in quantities and concentrations which were unsafe and unlawful.

130.    Defendant controlled the marketing of the products at issue, guaranteeing the Vapable Oils were marketed as "cannabis concentrate," "cartridges" or "vapes" in its own advertising and educational materials, as well as those which they imposed upon other retailers. Defendant also governed the representations made at related and third-party retailers.

131.    Defendant undertook the marketing and advertising, and directed HDC to undertake the labelling, and packaging of its Vapable Oils subject to the consideration and approval of Defendant, with the intent that consumers rely on the representations made therein.

132.    Defendant omitted and actively concealed information from Plaintiff, the Class, and other consumers, that was not only material to each transaction, but that Defendant HDC was duty bound to provide under the Illinois Cannabis Acts.

133.    Defendant concealed the fact that the products they were selling were being sold unlawfully, and that the products did not comply with Illinois law.

134.    Defendant did so by consistently representing its unlawful products were other categories of products that could potentially be lawful, like cannabis concentrate, or categories that were intentionally ambiguous, like "vapes", in order to conceal their true nature.

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

135.    Moreover, all CIPs are required to be labelled and packaged at the point of preparation, where each product shall be labelled with "the common or usual name of the item and the registered name." 410 ILCS 705/55-21(e)(2).

136.    However, here, Defendant failed at any time to properly classify its Vapable Oils, omitting their status as CIPs.

137.    Indeed, Defendant caused additional confusion by including both the warnings for smokeable cannabis, as well as CIPs on its products,.

138.    This has a likelihood to, and did, result in confusion among Plaintiff and the Class as to what Defendant's Vapable Oils actually were, and whether they were CIPs, which are vaped and cannot be smoked, or cannabis concentrate, which is intended to be smoked.

139.    Defendant knowingly and/or recklessly did so in order to avoid the regulations associated with CIPs, allowing Defendant to sell more product on a per transaction basis, subject to the higher recreational purchasing limits allowed for cannabis concentrates as opposed to CIPs.

140.    Defendant knew its Vapable Oils were legally defined as CIPs, meaning they were capped at lesser per transaction sales limits than cannabis concentrates.

141.    By selling CIPs as cannabis concentrate, Defendant was able to sell much larger quantities of THC by volume through the increased sales limits – quantities that violated Illinois law.

142.    This conduct, and the conduct generally alleged herein constitutes deceptive practices under the ICFA.

143.    Defendant undertook this scheme of conduct in an intentional, systematic, and knowing manner.

144. The deceptive conduct pervades Defendant's product descriptions, packaging, marketing, and public statements.

145. Defendant made the deceptive representations and omissions or concealment of material facts discussed above with the intent that Plaintiff and other consumers rely upon them in determining that its Vapable Oils were lawful and whether to purchase them or a competing product.

146. On information and belief, Defendant HDC undertakes identical wrongful conduct in the production, manufacturing, processing, labelling, and/or sale of other Vapable Oils in the State of Illinois on behalf of third parties unrelated to Defendant.

147. Defendant's improper conduct is misleading in a material way in that it induced Plaintiff and the Class to purchase HDC and Defendant's Vapable Oils when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with a reckless disregard for the truth.

148. Plaintiff and other members of the Class were exposed to, and reasonably relied upon, HDC's deceptive representations when they purchased HDC's Vapable Oils, just as Plaintiff and other members of the Class were exposed to, and reasonably relied upon, Defendant's representations, when they purchased its Vapable Oils from various dispensaries across the State of Illinois, believing they had purchased lawful, safe products, in compliance with the Illinois Cannabis Acts.

149. Plaintiff and other members of the Class were harmed in the full amount of the monies paid for the Vapable Oils purchased, as they were not lawfully placed into commerce by Defendant, and were willfully, wantonly, and/or with reckless disregard for the truth, marketed by Defendant as being compliant with the Illinois Cannabis Acts (they are not), lawful for an

individual to possess in many instances (they are not), and not unnecessarily dangerous (they are), in contravention of the Illinois Cannabis Acts.

150.    Defendant's conduct also amounts to a series of unfair practices.

151.    A plaintiff may recover against a defendant for undertaking an unfair practice where that practice (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to consumers. *Aliano v. Ferriss*, 2013 IL App (1st) 120242, ¶ 25 (2013).

152.    As discussed at length, Defendant's conduct offends the public policy of the State of Illinois, including, at a minimum, the Illinois Cannabis Acts, Department of Agriculture, Department of Public Health, and related governmental regulations, and basic public policies aimed at protecting consumers and ensuring that cannabis products are offered safely and legally in Illinois.

153.    Defendant's mischaracterization of certain of its products as cannabis concentrate instead of CIPs resulted in the increase of its per unit sales and acquiring significant market control of the cannabis industry in the State of Illinois.

154.    As discussed, Defendant's conduct violates the strict requirements of the Illinois Cannabis Acts which define cannabis concentrate, CIPs, and its packaging, labelling, and similar restrictions.

155.    Defendant categorized its Vapable Oils (CIPs) as cannabis concentrate, or confusingly as "vapes," with no further information, in order to sell greater volumes of the product by capitalizing on the State of Illinois's higher daily limit on sales of cannabis concentrate, namely, the possession limits imposed upon the purchaser.

FILED DATE: 3/18/2025 12:43 PM    2025CH03125

FILED DATE: 3/18/2025 12:43 PM    2025CH03125

156.    In doing so, Defendant unlawfully promoted the unregulated overconsumption of cannabis by marketing, promoting, and selling improperly labeled and packaged cannabis products that fail to feature or conform to the safeguards against overconsumption imposed by the Illinois Cannabis Acts. Specifically, safety labels, serving size limits, serving size identification, and legal quantity limits.

157.    Defendant's conduct foils the purpose and intent of the Illinois Cannabis Acts by undermining Illinois residents' right to access safe and legal cannabis in a regulated and controlled market.

158.    Defendant's pursuit of profit in disregard of the Illinois Cannabis Acts and their safety requirements is not only unethical and unscrupulous, it is immoral and oppressive.

159.    These are dangers sought to be mitigated by the Illinois Cannabis Acts through their dosing, labelling, and packaging requirements which expressly require that "[p]ackaging must not contain information that: (1) is false or misleading; [or] (2) promotes excessive consumption[.]" 410 ILCS 705/55-21(f).

160.    As such, Defendant's conduct amounts to a pervasive and systemic series of acts done in violation of the requirements of the Illinois Cannabis Acts and their enabling regulation in order to advance Defendant's own interests and increase Defendant's profits.

161.    The requirements imposed upon Defendant by the Illinois Cannabis Acts serve the public policy of the State of Illinois by promoting and preserving the health and safety of its residents in the face of a dangerous industry.

162.    To further this, the Illinois Cannabis Acts recognize the lack of consumer and purchaser knowledge regarding cannabis in all its forms, as well as the laws and regulations that govern its purchase and consumption.

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

163.    The Illinois Cannabis Acts imposed the regulations, which were ignored and violated by Defendant, in order to remedy the potential harms caused by this lack of knowledge, and shifts the duty of education and legal compliance to cannabis companies like Defendant – a duty that Defendant failed to uphold here.

164.    As such, Defendant's conduct is wholly unfair to the people of the State of Illinois, as well as those visiting Illinois and consuming cannabis in reliance on the public policies and laws of the State, and in contravention of the public policy goals of the general assembly in passing the Illinois Cannabis Acts.

165.    There is no benefit to consumers from Defendant's conduct. The only parties who benefit are Defendant, which enjoys reduced compliance costs and increased profits as a result of its conduct.

166.    Plaintiff and the Class would not have purchased Defendant's Vapable Oils but for Defendant's deceptive and unfair conduct described herein. As Plaintiff and the Class could not and would not have purchased an unlawful product, and would have purchased a legally compliant alternative instead.

167.    For the reasons discussed herein, Defendant violated and continue to violate ICFA by engaging in the deceptive or unfair acts or practices prohibited by 815 ILCS 505/2 and 510/2.

168.    Plaintiff and the Class are entitled to damages in an amount to be proven at trial, reasonable attorneys' fees, and any other penalties or awards that may be appropriate under the law.

FILED DATE: 3/18/2025 12:43 PM    2025CH03125

**COUNT III**
**Common Law Fraud**
**on behalf of Plaintiff and the Class**

169.    Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully stated herein.

170.    Defendant made continuous representations through its marketing materials, and the Defendant made representations via its packaging labels, that its Vapable Oils were cannabis concentrates that complied with the Illinois Cannabis Acts.

171.    These representations were false and material.

172.    The Vapable Oils are CIPs that do not comply with the Illinois Cannabis Acts.

173.    Defendant knows that the Vapable Oils they produce, package, and market, are actually CIPs that did not comply with the requirements of the Illinois Cannabis Acts, and that were prohibited from being sold to Plaintiff and the Class.

174.    Defendant's material misrepresentations operated as an inducement to Plaintiff and the Class to purchase Vapable Oils that, except for such inducement, they would not have purchased. It was Defendant's intent that its inducement would lead to consumers like Plaintiff and the Class purchasing Vapable Oils thinking that they were cannabis concentrates.

175.    Plaintiff and the Class trusted and relied upon HDC's packaging and labels, and Defendant's marketing materials and Defendant's package labels respectively, to be truthful, and did not know that these materials were false.

176.    On information and belief, HDC undertook identical wrongful conduct in the manufacture, labelling, packaging, and sale of other Vapable Oils.

177.    Plaintiff and the Class were reasonable in, and had a right to, their reliance on Defendant's omissions and misrepresentations due to the imposition of a strict regulatory regime

30

on HDC and other infusers to ensure their knowledge of the laws and products they produce, market, and sell as a matter of public policy.

178.    Defendant's material misrepresentations are intentional. Defendant's intent is that consumers like Plaintiff and the Class purchase HDC or Defendant's Vapable Oils, respectively, regardless of the Vapable Oils' illegal nature.

179.    Defendant's material misrepresentation categorizing its Vapable Oils as cannabis concentrates was also intentional conduct aimed at selling greater volumes of the product by capitalizing on the State of Illinois's higher per transaction limit on sales of cannabis concentrate compared to CIPs (which its Vapable Oils actually are).

180.    Plaintiff and the Class suffered harm as a result of HDC's and Defendant's misrepresentations and omissions, respectively.

181.    Plaintiff and the Class would not have purchased HDC's or Defendant's Vapable Oils, respectively, had Defendant not omitted or concealed its unlawful nature, as they would not and could not have purchased an unlawful product, and would have purchased a legally compliant alternative instead.

182.    As a direct and proximate cause of Defendant's conduct, Plaintiff and the Class are entitled to damages in an amount to be proven at trial, reasonable attorneys' fees, and any other penalties or awards that may be appropriate under applicable law.

**COUNT IV**
**Fraudulent Concealment**
**on behalf of Plaintiff and the Class**

183.    Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully stated herein.

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

FILED DATE: 3/18/2025 12:43 PM 2025CH03125

184. Defendant knew that the Vapable Oils they produced did not comply with the requirements of the Illinois Cannabis Acts, and were prohibited from being sold to Plaintiff and the Class.

185. Defendant's marketing, and HDC Group, LLC's packaging and labelling, omitted or concealed the fact that its Vapable Oils were unlawful, and unable to be sold by Defendant, any dispensary, or purchased or possessed by consumers. Defendant's marketing further omitted or concealed the fact that its Vapable Oils were CIPs, not cannabis concentrate.

186. As HDC was required by the Illinois Cannabis Acts to know the regulations and requirements of the law, they had knowledge that its Vapable Oils were CIPs and were not in compliance with the Illinois Cannabis Acts.

187. It was not within reasonably diligent attention, observation, and judgement of Plaintiff and the Putative Class that HDC and the Defendant's Vapable Oils, respectively, were not only CIPs, but noncompliant with the Illinois Cannabis Acts. That HDC, individually and together with Defendant, were actually concealing or suppressing these material facts was not reasonably known to Plaintiff and the Class, respectively, given the complex and highly-regulated nature of the cannabis industry.

188. Defendant concealed and omitted the fact that its Vapable Oils were actually CIPs with the intention that Plaintiff and the Class be misled as to the true condition of HDC and Defendant's Vapable Oils – that they do not comply with Illinois's cannabis laws.

189. On information and belief, HDC undertook identical wrongful conduct in the manufacture, labelling, packaging, and sale of other Vapable Oils.

190. Plaintiff and the Class were reasonably misled by Defendant's omissions and concealment of the true nature of its Vapable Oils.

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

191.     Plaintiff and the Class suffered harm as a result of HDC and Defendant's omissions and concealment respectively.

192.     Plaintiff and the Class would not have purchased HDC or Defendant's Vapable Oils, had HDC, or Defendant, respectively, not omitted or concealed their unlawful nature, as they would not and could not have purchased an unlawful product, and would have purchased a legally compliant alternative instead.

193.     As a direct and proximate cause of HDC's individual, and Defendant's combined, conduct, Plaintiff and the Class, respectively, are entitled to damages in an amount to be proven at trial, reasonable attorneys' fees, and any other penalties or awards that may be appropriate under applicable law.

## COUNT V
**Breach of Express Warranty
on behalf of Plaintiff and the Class**

194.     Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully stated herein.

195.     Plaintiff and each other Class Member formed a contract with HDC at the time they purchased Vapable Oils. The terms of the contract include the promises and affirmations of fact made by Defendant on its Vapable Oil packaging, labeling and instructions, and through marketing and advertising, including that the Vapable Oils would be of the quality and character as represented including but not limited to statements about the legality, safety, dosage, and efficacy of the product, in addition to the lack of disclosure regarding possession limitations.

196.     The promises and affirmations of fact made by Defendant's marketing, packaging, labeling and instructions constitute express warranties and became part of the basis of the bargain, and are part of the standardized expectation between the Plaintiff and Class Members with HDC.

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

197. Defendant expressly warranted that its Vapable Oils were legal, safe, effective, and appropriately dosed, and did not contain any undisclosed risks.

198. Defendant made these misrepresentations, or omitted material information, in Defendant's marketing, packaging, labeling, and instructions.

199. Defendant sold Vapable Oils that they expressly warranted were legal, safe, effective, and appropriately dosed cannabis products that did not contain any undisclosed risks.

200. Defendant's Vapable Oils did not conform to its express representations and warranties because the products contained undisclosed risks.

201. Defendant HDC, as a licensed Infuser, and the manufacturers, processors, makers, packagers, and labelers of the Vapable Oils, was required by the Illinois Cannabis Acts to have, and did have, actual knowledge that its Vapable Oils were not only unlawful products, but they also failed to conform to the express representations and warranties Defendant had made regarding them.

202. Defendant's knowledge that its Vapable Oils were unlawful and failed to conform to its express representations and warranties, is made evident by the State's announcement that certain products, like Defendant's Vapable Oils, are CIPs. *See* Ill. Dept. Ag. CA-2022-09-INF Infusers and Vape Cartridges.

203. At all times relevant, Illinois had codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose.

204. At the time Defendant marketed and sold its Vapable Oils, they recognized the purposes for which the products would be used, and expressly warranted the products were legal,

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

safe, effective and appropriately dosed for intended use, and did not contain any undisclosed risk. These affirmative representations became part of the basis of the bargain in every purchase.

205.    Defendant breached its express warranties with respect to its Vapable Oils as they were not of merchantable quality and were not fit for their ordinary purpose. Defendant promised legal, safe, effective, and appropriately dosed products, but the Vapable Oils were not as promised because their actual legal and safety profile was not the same as that represented and bargained for.

206.    Plaintiff and each other Class Member would not and could not have purchased the Vapable Oils had they known these products carried undisclosed risks and were unlawful.

207.    To the extent applicable, direct privity is not required between Defendant and Plaintiff or each other Class Member because among other things, Defendant made direct statements about the safety of its products, and intended its statements and affirmations to flow to Plaintiff and each of the other Class Members.

208.    Defendant maintained a strict list of authorized dispensaries that it contracts with. Defendant directly sold the Vapable Oils through authorized dispensaries operating under strict direction from Defendant.

209.    As a direct and proximate result of Defendant's breach of warranty, Plaintiff and each other Class Members has been injured and suffered damages in the amount of the purchase price of the Vapable Oils, in that the Vapable Oils they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

210.    Although Plaintiff does not seek to recover for physical injuries, Defendant's Vapable Oils carried undisclosed risks to Plaintiff and other Class Members.

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

211.    Because Defendant had actual knowledge that its Vapable Oils were unlawful, and failed to conform to the express representations and warranties made regarding the Vapable Oils, pre-suit notice of Plaintiff's claim is not required.

## COUNT VI
## Breach of Implied Warranty
## on behalf of Plaintiff and the Class

212.    Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully stated herein.

213.    Plaintiff and each other Class Member formed an agreement with HDC at the time they purchased Vapable Oils. The terms of the agreement include the promises and affirmations of fact made by the Defendant in its  marketing, packaging, labeling and instructions for the Vapable Oils, including that the Vapable Oils would be of the quality and character as represented including but not limited to statements about the legality, safety, efficacy, and dosages of the Vapable Oils, in addition to the lack of disclosure regarding possession limitations.

214.    The foregoing constitute implied warranties and became part of the basis of the bargain, and are part of the standardized expectation between Plaintiff and the Class Members and Defendant.

215.    Defendant impliedly warranted that its Vapable Oils were legal, safe, effective, and appropriately dosed for intended use, and did not contain any undisclosed risks.

216.    Defendant made these misrepresentations, or omitted material information, in its marketing (including its website and the websites of its authorized dispensaries) for the Vapable Oils, and the Vapable Oils' packaging, labeling, and instructions.

217.    Defendant sold Vapable Oils that it impliedly warranted were legal, safe and effective cannabis products that did not contain any undisclosed risks.

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

218. Defendant's Vapable Oils did not conform to its implied representations and warranties because the products contained undisclosed risks.

219. Defendant HDC, as a licensed manufacturer, processor, and maker of the Vapable Oils, was required by the Illinois Cannabis Acts to have, and did have actual knowledge that its Vapable Oils were not only unlawful products, but they also failed to conform to the implied representations and warranties Defendant had made regarding its Vapable Oils.

220. Defendant's knowledge that its Vapable Oils were unlawful and failed to conform to its implied representations and warranties, is made evident by the State's announcement that certain products, like Defendant's Vapable Oils, are CIPs. *See* Ill. Dept. Ag. CA-2022-09-INF Infusers and Vape Cartridges.

221. At all times relevant, Illinois and all other states had codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose.

222. At the time Defendant marketed and sold its Vapable Oils, Defendant recognized the purposes for which the products would be used, and impliedly warranted the products were legal, safe, effective, and appropriately dosed for intended use, and did not contain any undisclosed risk. These representations became part of the basis of the bargain in every purchase.

223. Defendant breached its implied warranties with respect to its Vapable Oils as they were not of merchantable quality, and were not fit for their ordinary purpose. Defendant promised legal, safe, effective, and appropriately dosed products, but the Vapable Oils were not as promised because their actual safety profile was not the same as that represented and bargained for.

224. Plaintiff and each other Class Member would not and could not have purchased the Vapable Oils had they known these products carried undisclosed risks and were unlawful.

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

225.     To the extent applicable, direct privity is not required between Defendant and Plaintiff or each other Class Member because, among other things, Defendant is a manufacturer and made direct statements about the safety of its products, and intended its statements and affirmations to flow to Plaintiff and each other Class Member. Further, Plaintiff and each other Class Member were intended third-party beneficiaries to the extent Defendant made any warranty or representation to a dispensary who in turn resold Vapable Oils to consumers.

226.     Defendant maintained a strict list of authorized dispensaries. Defendant directly sold the Vapable Oils themselves or through authorized dispensaries operating under strict direction from Defendant.

227.     As a direct and proximate result of Defendant's breach of warranty, Plaintiff and each other Class Member has been injured and suffered damages in the amount of the purchase price of the Vapable Oils, in that the Vapable Oils they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

228.     Because Defendant had actual knowledge that its Vapable Oils were unlawful and failed to conform to the implied representations and warranties made regarding the Vapable Oils, pre-suit notice of Plaintiff's claim is not required.

**COUNT VII**
**Unjust Enrichment**
**on behalf of Plaintiff and the Class**
(*Pled in the alternative to Counts V and VI*)

229.     Plaintiff incorporates the foregoing allegations in Paragraphs 1 – 193 as if fully stated herein.

230.     To the extent that the Court finds that the transactions to sell Vapable Oils as alleged herein constitute a contract, such contract is *void ab initio* as a contract for the sale of unlawful

goods, with non-compliant Vapable Oils and unlawful cannabis products as the subject of each transaction.

231.    By manufacturing, advertising, marketing, selling, and profiting off of the sale of unlawful products to Plaintiff and the Class, Defendant was unjustly enriched by its unlawful conduct.

232.    Defendant's unjust enrichment occurred to the detriment of Plaintiff and Members of the Class.

233.    The benefit retained by Defendant is far greater than the monies paid by Plaintiff and Members of the Class, as Defendant is not only enriched by the funds which they have received from Plaintiff and members of the Class in exchange for Defendant's unlawful products, but Defendant also benefits by reducing what would ordinarily be necessary compliance expenses to ensure its Vapable Oils are safe and compliant or properly labelled and packaged, further enriching them to the detriment of consumers, including Plaintiff and the Class.

234.    Defendant has thus been unjustly enriched by at least the amount that Plaintiff and each Member of the Class spent on its Vapable Oils and any associated interest. It would be unjust to allow Defendant to retain this enrichment.

235.    Defendant's retention of these monetary benefits violates fundamental principles of justice, equity, and good conscience.

236.    Plaintiff and the other Members of the Class are entitled to restitution in the amount by which Defendant has been unjustly enriched to Plaintiff and the Class Members' detriment, and an order requiring Defendant to disgorge any additional profits or other benefit they have retained as a result of its unjust and unlawful conduct.

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alex Martinez, on behalf of Plaintiff and all others similarly situated, respectfully requests that the Court enter an order awarding the following relief as pled in the foregoing and judgment against Defendant as follows:

a. An Order certifying the Class, defining the Class as requested herein, appointing Plaintiff as class representative, and appointing their counsel as class counsel;

b. An award of any actual, compensatory, and enhanced damages permitted to Plaintiff and other Members of the Class, for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

c. An award of punitive damages for Defendant's misconduct and deliberate indifference;

d. An award of reasonable attorneys' fees, costs, and other litigation expenses;

e. An award of pre- and post-judgment interest as available under law;

f. The disgorgement of any funds in the amount Defendant was unjustly enriched by its conduct; and

g. Such further and other relief as the Court deems just, reasonable, and equitable.

Dated: March 18, 2025

Respectfully submitted,

**ALEX MARTINEZ**, on behalf of himself and others similarly situated

/s/ Kyle A. Shamberg
Kyle Shamberg
**CARROLL SHAMBERG, LLC**
Firm ID: 102342
111 W. Washington Street, Suite 1240
Chicago, IL 60602
kyle@csclassactions.com
(872) 215-6205

Laura Luisi
Jamie Holz
**LUISI HOLZ LAW**
Firm ID: 101603
161 N. Clark St., Suite 1600
Chicago, Illinois 60601

FILED DATE: 3/18/2025 12:43 PM   2025CH03125

Tel: (312) 639-4478
LuisiL@luisiholzlaw.com
HolzJ@luisiholzlaw.com

*Attorneys for Plaintiff and the Putative Class*